IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| BRANDON SAMPLES,<br><br>                    Petitioner,<br><br>v.<br><br>STATE OF UTAH, *et al*.,<br><br>                    Respondent. | **MEMORANDUM DECISION<br>& ORDER DENYING<br>HABEAS-CORPUS PETITION**<br><br>Case No. 4:23-CV-72-AMA<br><br>District Judge Ann Marie McIff Allen |

In this federal habeas corpus case, *pro se* inmate Brandon Samples, ("Petitioner")[1] attacks the validity of his state conviction. *See*, 28 U.S.C.S. § 2254 (2026) ("[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Respondent asserts that all of Petitioner's federal claims are procedurally defaulted because none of them were fairly presented to the Utah Supreme Court for resolution.

This court concludes that Petitioner has procedurally defaulted all claims asserted in the Petition. The Petition is therefore DENIED.

## I.    BACKGROUND

The Utah Court of Appeals provided the following summary of the factual basis for Petitioner's conviction:

> In early May 2019, an oil worker found a body lying on the side of a rural road in Emery County, Utah. The body was badly bruised and missing a finger. After law enforcement arrived and identified the victim (Victim), officers learned that Victim had spent his last

---

[1]Because Petitioner is pro se, his pleadings must be construed liberally. *Garrett v. Selby, Connor, Maddux, & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). However, this requirement does not obligate the Court to form arguments for him or excuse compliance with procedural rules. *Id*.

1

> night with two people: Brandon Samples [Petitioner] and Samples's girlfriend (Girlfriend).
>
> Police soon located Girlfriend, and over the course of several interviews, Girlfriend told officers that [Petitioner] had killed Victim and cut off his finger. Based on her claims and other collected evidence, the State charged [Petitioner] with murder, desecration of a human body, and three counts of obstructing justice. The case later went to trial, and at its close, the jury convicted [Petitioner].

*State v. Samples*, 2022 UT App. 125, ¶¶ 1-2, 521 P.3d 526 (ECF No. 6-1).

At trial, Girlfriend testified that Petitioner had been responsible for the killing. She testified that Petitioner believed Victim had killed Petitioner's mother. She told the jury that Petitioner had beaten the victim to death with a metal baseball bat, breaking the bat in the process. She described their efforts to dispose of the body and evidence. She also told the jury that Petitioner had cut off victim's finger in order to take a ring. The ring matched rings belonging to Petitioner and his mother.

Girlfriend acknowledged that she had originally lied to police when she told police that she and Petitioner had last seen the victim when they dropped him off at his landlord's house. She also acknowledged that although she had been wearing a cast on her recently broken arm, she had hit victim with a bat "a few times" prior to his death.

Petitioner's trial counsel objected when a detective testified about out-of-court statements Girlfriend had given to the police, including when he confirmed that Girlfriend had recanted her initial claims. The judge overruled the objection, finding that "It's been in court. We've heard her testimony. I want to see if that is consistent." Petitioner's counsel did not object when the prosecutor asked the detective whether it was "logical" that Girlfriend could have caused Victim's injuries with a broken arm. The detective answered

> I – I don't think so, just based on that cast on her wrist and running through the palm of her hand. I think that would make that difficult

2

> to control [sic] of that. I don't know. I've held many things in my hands at the same time and it's never been a comfortable thing, but – I wouldn't think so, but I – that's just my opinion.

ECF No. 6-1, at ¶ 33.

A medical examiner described the severity of the victim's extensive injuries – including multiple skull fractures, missing teeth, multiple broken bones in the victim's arm and bruising and scrapes on the upper body, and his amputated finger. She gave her opinion that the bruises were all inflicted at the same time because they had "the same general appearance," but the finger was likely amputated post-mortem because there was no evidence of bleeding in the tissues around the cuts.

When Petitioner took the stand in his defense, he testified that Girlfriend was responsible for the murder. The Court of Appeals summarized his testimony.

> In his testimony, [Petitioner] denied having any motive to kill Victim, claiming that Victim was his friend and had been there for [Petitioner] during his "hardest times." [Petitioner] denied believing that Victim killed his mother. And, of note, [Petitioner] blamed Girlfriend for Victim's death. According to [Petitioner], Girlfriend got mad at him while they were driving Victim back to Price. [Petitioner] said that she started "clubbing" him on the head, so he jumped out of the car, and she drove off. [Petitioner] said that he started walking along the road and that she came back a while later without Victim. He said that when they got back to Girlfriend's house, Girlfriend started to cry and told him that Victim "forced himself on her" after they stopped to go rock hunting. In response, she allegedly grabbed a bat from her car and started "smacking" Victim with it, breaking the bat in the process. According to [Petitioner], she tried to use a "mini shovel" to dig a hole but couldn't "because of her hand and the size of the shovel."
>
> During cross-examination, [Petitioner] was asked how Girlfriend could have swung a bat with her cast. [Petitioner] responded that although she couldn't dig a hole, "she does everything herself" and "could swing a bat." When [Petitioner] was asked if he believed Girlfriend's story that Victim attacked her, he said, "I do, kind of, but I don't know." He added, "I've known [Victim] personally and I don't see him just grabbing somebody. But that's what she told me. And she was pretty hysterical, so I believed her."

[Petitioner] also testified that after hearing Girlfriend's story, the two came "up with a plan to either get rid of [Victim] and dispose of his body or rough him up and … make him look like he fell." But [Petitioner] said that when they got to the scene, they had difficulty moving Victim's body because Girlfriend "couldn't really lift a lot." [Petitioner] said that though he had a saw, he decided against "chopping him up," so he instead got a bat and "started hitting [Victim]." [Petitioner] admitted that he hit Victim in the face "[p]robably like four or five times, six times," and that it "[c]ould have been more." He also admitted that he hit Victim in the arm, "[p]robably like three times." He said that he then handed the bat to Girlfriend and that she hit Victim as well. [Petitioner] also explained Victim's missing finger. He said that he, his mother, and Victim all had matching rings. [Petitioner] didn't have his anymore, so when he saw the ring on Victim's finger, he decided to take it because it was "sentimental." By his own account, he was unable to get the ring off Victim's finger, so he decided to cut the finger off. Qualifying his own actions, however, he said that he didn't take any of Victim's other jewelry because "[t]hat would be wrong." [Petitioner] said he put the ring in a latex glove, and they left. [Petitioner] later testified that he "ended up throwing [the ring] out."

….

[Petitioner] further admitted that he didn't "expect nobody to believe" him. He said that he wouldn't be surprised if nobody believed that a woman with a broken arm killed somebody she just met. All in all, he agreed that his story was "ridiculous."

ECF No. 6-1, at ¶¶ 40-45. Petitioner also acknowledged that he had seventeen prior convictions which involved some form of dishonesty. *Id*. at ¶ 98.

On appeal Petitioner argued that the trial court had erred by failing to sustain Petitioner's objection to a detective's testimony which reiterated testimony that had previously been offered by Petitioner's Girlfriend. Petitioner claimed that the repetition by a law enforcement agent bolstered Girlfriend's legitimacy. Petitioner further argued that his trial counsel provided ineffective assistance by failing to object to other hearsay testimony offered by law enforcement, and by failing to seek a continuance to rebut the medical examiner's testimony. Finally, Petitioner argued that he was prejudiced by the cumulative effect of the errors.

The Court of Appeals analyzed each issue and concluded that none of the alleged errors

4

would have prejudiced Petitioner.

> In short, the jury was tasked with deciding who killed Victim: [Petitioner] or Girlfriend. [Petitioner] had two working arms and a known motive for the killing that was corroborated by two witnesses, and his acknowledged behavior after the killing was consistent with the State's insistence that he was the perpetrator of this crime. By contrast, Girlfriend had a broken arm, no previously known motive for hurting Victim, and no blood on the cast that was on her arm the entire time. So when the jury heard [Petitioner] admit that his story sounded like "a ridiculous story," his concession was reflective of the overall evidentiary picture.
>
> Given this, we have no hesitation in concluding that the effect of the various alleged errors--either individually or cumulatively-is not enough to "undermine[] our confidence that a fair trial was had." *Martinez-Castellanos*, 2018 UT 46, ¶ 39 (quotation simplified).

*Id*. at ¶¶101-02.

Petitioner's brief to the Utah Supreme Court posed a single question for review: "Did the court of appeals err when it concluded that [Petitioner] was not prejudiced by any of the errors, singularly or cumulatively, that he raised on appeal." Petitioner's arguments addressed the first three errors he alleged on appeal, but abandoned his claim related to the medical examiner's testimony. In context, Petitioner framed the question he presented for certiorari as follows:

> This case presents the question of whether the court of appeals correctly determined that Petitioner Brandon Samples's trial counsel acted reasonably a [sic] detective's testimony opining on whether Brandon's girlfriend, Anna, would have been physically capable of inflicting the victim's injuries.
>
> This case came down to a credibility contest between Brandon and Anna, his girlfriend at the time the murder occurred. Thus, the detective's testimony stating that Anna was not physically capable of causing the murder victim's injuries amounting to improper bolstering and unqualified expert testimony. Brandon was harmed by his counsel's failure to object to this testimony.
>
> **Question 1:** Did the court of appeals err when it concluded that Brandon was not prejudiced by any of the errors, singularly or cumulatively, that he raised on appeal?

ECF No. 20-5, at 4. Petitioner's briefing on the issue of ineffective assistance of counsel cited only Utah state law, and included no indication that Petitioner also asserted a claim that his

5

attorney's failure to provide effective representation violated federal law. Petitioner was represented by counsel throughout his direct appeal, including his petition for certiorari to the Utah Supreme Court.

## II. PETITIONER'S CLAIMS

The Petition asserts four grounds for relief: (1) Petitioner's trial counsel provided ineffective assistance by failing to object to the detective's unqualified opinion testimony about whether Girlfriend would have been able to inflict Victim's injuries with a cast on her arm (ECF No. 6, at 5.); (2) "This case appears to be a case based on what [Petitioner] said and what [Petitioner's girlfriend] said." *Id*. at 6-8; (3) Petitioner's trial counsel provided ineffective assistance by failing to request a continuance to retain a rebuttal witness to the medical examiner's opinion. *Id*. at 8; and (4) The cumulative effect of errors unfairly prejudiced Petitioner. *Id*. at 8-9.

## III. LEGAL FRAMEWORK

a. Liberal Construction

Pro se pleadings are entitled to liberal construction. *See, Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, (1976)); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.") "Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague

6

and conclusory allegations." *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992);

*Garrett v. Selby, Connor, Maddux, & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

However, pro se status does not excuse failure to comply with procedural requirements.

*Rose v. Lundy*, 455 U.S. at 520 ("Just as pro se petitioners have managed to use the federal

habeas machinery, so too should they be able to master this straightforward exhaustion

requirement."); *Valdez v. Jones*, 2009 U.S. Dist. LEXIS 117162, *15-16 ("Applicant's pro se

representation neither exempts him from the exhaustion requirements nor from demonstrating

cause and actual prejudice or demonstrating that a fundamental miscarriage of justice will

result.") (citing *Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994)). Utah courts typically

hold pro se litigants to the same standards of knowledge and practice as licensed attorneys:

> As a general rule, a party who represents himself will be held to
> the same standard of knowledge and practice as any qualified
> member of the bar. Nevertheless, because of his lack of technical
> knowledge of law and procedure [a layman acting as his own
> attorney] should be accorded every consideration that may
> reasonably be indulged.

*State v. Winfield*, 2006 UT 4, P19 (internal citations omitted). Pro se status does not excuse

failure to follow the rules of appellate procedure in the Utah Courts. *Allen v. Friel*, 2008 UT 56,

¶11 ("Reasonable considerations do not include the need to … explain legal rules, or otherwise

attempt to redress the ongoing consequences of the party's decision to function in a capacity for

which he is not trained.")

b. Procedural Default

"A threshold question that must be addressed in every habeas case is that of exhaustion."

*Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (quoting *Harris v. Champion*, 15 F.3d

1538, 1554 (10th Cir. 1994)). Before a petitioner may seek a federal writ of habeas corpus, a

state prisoner must afford the state courts the "opportunity to pass upon and correct alleged

violations of its prisoners' federal rights". *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting

*Duncan v. Henry*, 513 U.S. 354, 365 (1995)); *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir.

2011) ("To exhaust a claim, a state prisoner must pursue it through 'one complete round of the

State's established appellate review process,' giving the state courts a 'full and fair opportunity' to

correct alleged constitutional errors.") (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845

(1999))). "Because the exhaustion doctrine is designed to give the state courts a full and fair

opportunity to resolve federal constitutional claims before those claims are presented to the

federal courts . . .  state prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review

process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "To provide the State with the

necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court

… thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27,

29 (2004) (quoting *Duncan* at 365-66); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is

not the province of a federal habeas court to reexamine state-court determinations on state-law

questions.")

The United States Supreme Court has long recognized that the exhaustion requirement

requires a federal habeas petitioner to "present the state courts with the same claim he urges upon

the federal courts." *Picard v. Connor*, 404 U.S. 270, 276 (1970) (citing *Darr v. Burford*, 339

U.S. 200, 203 (1950); *Davis v. Burke*, 179 U.S. 399, 401-403 (1900)). "The exhaustion

requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court

conviction without' first according the state courts an 'opportunity to … correct a constitutional

violation.'" *Davila v. Davis*, 582 U.S. 521, 527 (2017) (quoting *Rose v. Lundy*, 455 U.S. 509, 518

(1982). "The crucial inquiry is whether the 'substance' of the petitioner's claim has been

presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)).

When a petitioner has "'failed to exhaust his state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). A state prisoner's default of his federal claims in state court under independent and adequate state procedural rules bars federal habeas review of those claims. *Coleman v. Thompson*, 501 U.S. at 750. A state procedural rule is "independent" "if it relies on state law, rather than federal law, as the basis for the decision." *Simpson v. Carpenter*, 912 F.3d 542, 571 (10th Cir. 2018) (quoting *Banks v. Workman*, 692 F.3d 1133, 1145 (10th Cir. 2012)). And it is "adequate" if it is "strictly or regularly followed and applied evenhandedly to all similar claims." *Id*. (quoting *Thacker v. Workman*, 678 F.3d 820, 835 (10th Cir. 2012)).

Utah state prisoners may exhaust federal claims through their direct appeals or through a petition under Utah's Post-Conviction Remedies Act ("PCRA"). The PCRA limits the availability of relief under that section. The PCRA states in relevant part:

> A person is not eligible for relief under this chapter upon any ground that:
> (a) may still be raised on direct appeal or by a post-trial motion;
> (b) was raised or addressed at trial or on appeal;
> (c) could have been but was not raised at trial or on appeal;
> (d) was raised or addressed in any previous request for post-conviction relief or could have been, but was not, raised in a previous request for post-conviction relief; or
> (e) is barred by the limitation period established in Section 78B-9-107.

9

Utah Code Ann. § 78B-9-106(1) (2026). The relevant statute of limitations is one year after the

cause of action accrues. Utah Code Ann. § 78B-9-107(1). A cause of action under the PCRA

accrues on the latest of the following dates:

> (a) the last day for filing an appeal from the entry of the final
> judgment of conviction, if no appeal is taken;
> (b) the entry of the decision of the appellate court that has
> jurisdiction over the case, if an appeal is taken;
> (c) the last day for filing a petition for writ of certiorari in the Utah
> Supreme Court or the United States Supreme Court, if no petition
> for writ of certiorari is filed;
> (d) the entry of the denial of the petition for writ of certiorari or the
> entry of the decision on the petition for certiorari review, if a petition
> for writ of certiorari is filed;
> (e) the date on which petitioner knew or should have known, in the
> exercise of reasonable diligence, of evidentiary facts on which the
> petition is based; or
> (f) the date on which the new rule described in Subsection 78B-9-
> 104(1)(g) is established.

Utah Code Ann. §78B-9-107(2). The Utah Rules of Appellate Procedure typically require a

notice of appeal to be filed within 30 days of a final judgement. Utah R. App. P. 4(a). However,

litigants may move for an extension of the period to file a notice of appeal for good cause or

excusable neglect. Utah R. App. P. 4(e); *Hoyer v. State*, 2009 UT 38, ¶ 12; *Reisbeck v. HCA

Health Servs.*, 2000 UT 48, ¶ 5 ("upon a showing of excusable neglect or good cause, [the trial

court] may extend the time for filing a notice of appeal upon motion filed not later than 30 days

after the expiration of the time prescribed by [Utah Rule of Appellate Procedure 4(a)].") "The

discretion of the trial court to grant or deny a Rule 4(e) motion is very broad, highly fact

dependent, and fundamentally equitable in nature." *Serrato v. Utah Transit Auth.*, 2000 UT App

299, ¶ 6. Utah Court of Appeals has explained that "[e]xcusable neglect 'is an admittedly

neglectful delay that is nevertheless excused by special circumstances,' whereas good cause

'pertains to special circumstances that are essentially beyond a party's control.'" *Bennett v.

10

*Bigelow*, 2013 UT App 180, P10 (quoting *Serrato v. Utah Transit Auth.*, 2000 UT App 299, ¶ 7).) The Tenth Circuit Court of Appeals has sustained the PCRA filing restrictions in Utah Code Section 78B-9-106(1) as independent and adequate state grounds to support procedural default of federal claims. *See, e.g., Prater v. Blood*, No. 22-4024, 2022 U.S. App. LEXIS 33747, at *10, 2022 WL 17491939 (10th Cir. Dec. 8, 2022) (unpublished); *Williams v. Utah*, No. 23-4092, 2024 U.S. App. LEXIS 16072, at *6 2024 WL 3272243 (10th Cir. July 2, 2024) (unpublished).

c. Exception to Procedural Default

Procedural default may be avoided if a petitioner can demonstrate either "cause and prejudice" or a "fundamental miscarriage of justice." *Thomas v. Gibson*, 218 F.3d at 1221 ("This court may not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground[] unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'") (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998)(alteration in original)).

1. Cause and Prejudice

A petitioner may be able to overcome procedural default if he can establish "cause" to excuse the procedural default and demonstrate that he suffered "actual prejudice" from the alleged violation. *Davila v. Davis*, 582 U.S. at 524. "[T]o satisfy the 'cause' standard, a petitioner must show that 'some objective factor external to the defense' impeded his compliance with Utah's procedural rules." *Dulin v. Cook*, 957 F.2d at 760 (citations omitted). "A factor is external to the defense if it cannot fairly be attributed to the prisoner." *Davila*, 582 U.S. at 528.

Meanwhile, to demonstrate prejudice, "[t]he habeas petitioner must show not merely that… errors … created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (emphasis in original)

11

(alteration in original) (quoting *United States v. Frady*, 456 U.S. 152 (1982)). Prejudice requires a petitioner to show that there is a reasonable probability that, but for alleged violation, the result of the proceeding would have been different. *See*, *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

2. Miscarriage of Justice

Alternatively, a petitioner may overcome the procedural bar if he can show that his conviction resulted in a "fundamental miscarriage of justice." *See Thomas v. Gibson*, 218 F.3d at 1221 (alteration omitted) (citation omitted). The fundamental-miscarriage exception requires a prisoner to make "a credible showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). The petitioner can make that showing if he can demonstrates that "in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386-87 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The actual-innocence claim must be grounded on solid evidence not adduced at trial. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citing *Schlup*, at 324). Because such evidence is so rare, "in virtually every case, the allegation of actual innocence has been summarily rejected. " *Id.* (citation omitted).

## IV. ANALYSIS

a. Failure to State a Claim

Petitioner's second claim fails to provide sufficient clarity to allow the court to "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail." *See*, *Hall v. Bellmon*, 935 F.2d at 1110. Petitioner's second claim reads "This case appears to be a case based on what [Petitioner] said and what [Girlfriend] said." In support of this claim, Petitioner merely rehashes the version of facts he offered at trial. Petitioner does not identify any rights he claims were violated by the jury's apparent decision to discredit his testimony. Nor does

12

Petitioner cite any legal authority to substantiate his claim. The court is unable to discern any adequate basis for Petitioner's second claim for federal habeas relief. *See, Northington v. Jackson*, 973 F.2d at 1521. ("[T]he court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations.")

b. Petitioner's Claims are Procedurally Defaulted

All of Petitioner's claims are procedurally defaulted because Petitioner did not afford the Utah courts a fair opportunity to correct the alleged violations of federal law, and the time for doing so has now passed. *See, Baldwin v. Reese*, 541 U.S. at 29 ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court … thereby alerting that court to the federal nature of the claim." (quoting *Duncan v. Henry*, 513 U.S. at 365-66)); *Picard v. Connor*, 404 U.S. at 276 (a federal habeas petitioner must "present the state courts with the same claim he urges upon the federal courts.").

Petitioner, who was represented by counsel throughout his appeal, failed to provide the Utah Supreme Court with a fair opportunity to determine whether the alleged errors violated federal law. Petitioner invited the Utah Supreme Court to determine whether Utah Court of Appeals had erred by concluding that Petitioner was not prejudiced by the errors he raised on appeal, either singularly or cumulatively. ECF No. 20-5, at 4. Petitioner's briefing to the Supreme Court alleged errors similar to those presented in this proceeding, including whether his counsel had provided ineffective assistance of counsel by failing to object to the detective's speculation that it was not logical that Girlfriend could have caused Victim's injuries because her arm was in a cast. But Petitioner failed to alert the Utah Supreme Court to a federal dimension to his claims. The fact that Petitioner had cited federal law in his briefing to the lower court is insufficient to alert the supreme court to a federal claim. *See, Baldwin v. Reese*, 541 U.S. at 32 ("[A] state

13

prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.") Petitioner failed to exhaust any federal claims through his direct appeal.

Nor has Petitioner exhausted any federal claims through the state post-conviction relief process. The PCRA requires petitioners to file for relief within one year of the date on which the cause of action accrues. The Utah Supreme Court rejected Petitioner's petition for certiorari in his direct appeal on February 23, 2023. *State v. Samples*, 525 P.3d 1279 (Utah Sup.Ct. 2023). Petitioner's conviction became final on May 24, 2023, after Petitioner declined to file an appeal to the United States Supreme Court. *See,* Sup. Ct. R. 13.1 (providing a ninety-day period to petition for certiorari review of a decision by a state supreme court); Utah Code Ann. 78B-9-107(2)(c). Petitioner's time to file a petition under the PCRA expired one year later, on May 24, 2024. *See* Utah Code Ann. § 78B-9-107(1).

Petitioner filed an untimely PCRA petition on April 29, 2025. Petition, *Samples v. State*, No. 250700015, dkt. no. 1 (Utah 7th Dist., Apr. 29, 2025). That petition asserted four claims: 1) Petitioner was denied qualified trial counsel. *Id*. at 6; 2) Petitioner was denied qualified appellant counsel. *Id*.; 3) The prosecution committed a *Brady* violation by failing to disclose exculpatory information about a murder confession. *Id*. at 6-7; and 4) the "patchwork" jury instructions allowed conviction despite a non-unanimous jury. *Id*. at 7.

The district court dismissed Petitioner's first and second PCRA claims as facially frivolous. Order to Show Cause, *Id.* dkt. no. 8, at 1 (Jul. 17, 2025). The district court then ordered Petitioner to show cause why his remaining claims should not be dismissed because the claims were untimely and because the claims were not raised at trial or on appeal. *Id*. at 2-3

14

(citing U.C.A. § 78B-9-106(1)(c)). The district court then dismissed Petitioner's remaining claims as untimely under sections 78B-9-106 and 78B-9-107 of the Utah Code. Order of Dismissal, *Id*. dkt. no. 13 (November 20, 2025).

Petitioner's PCRA appeal remains pending. Nevertheless, regardless of the outcome of that appeal, none of the claims Petitioner presents in this action could be exhausted in that proceeding. None of his present claims were raised in his untimely PCRA petition. Further, Utah Code Section 78B-9-106(1) would bar Petitioner from raising the claims in a new PCRA petition. Therefore, all of the claims Petitioner asserts in this action are procedurally defaulted.

c. No Cause to Excuse Procedural Default

Petitioner fails to establish cause, external to his defense, to excuse his procedural default. *See, Dulin v. Cook*, 957 F.2d at 760 ("[T]o satisfy the 'cause' standard, a petitioner must show that 'some objective factor external to the defense' impeded his compliance with Utah's procedural rules."). Petitioner has not explained why any of the claims he raises in this Petition could not have been presented to the Utah Supreme Court, either on direct appeal or through a timely PCRA petition.

Petitioner's Reply argues that his "Sixth Amendment right to effective counsel was violated, attorney of record failed to call witnesses, or obtain evidence helpful to his defense or, call expert witnesses necessary to his case. Failed to examine and/or cross examine witnesses effectively." ECF No. 25, at 6. This argument merely reframes one of his habeas claims – ineffective assistance of trial counsel; it does not establish an objective factor external to his defense that impeded his compliance with Utah's procedural rules" on appeal or the PCRA process. *See, Dulin v. Cook*, 957 F.2d at 760.

15

Petitioner attempts to argue that "the district court's ability to consider whether [a constitutional] right was denied … should not be extinguished simply because of the passage of time." ECF No. 25, at 7. However, procedural default under independent and adequate state procedural rules bars federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Courts regularly dismiss unexhausted habeas claims because of independent and adequate state procedural rules. *See, e.g. Thomas v. Gibson*, 218 F.3d at 1221 (10th Cir. 2000) ("[T]he Supreme Court has held that if a petitioner 'failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *Prater v. Blood*, No. 22-4024, 2022 U.S. App. LEXIS 33747, at *10, 2022 WL 17491939 (10th Cir. Dec. 8, 2022) (unpublished); *Williams v. Utah*, No. 23-4092, 2024 U.S. App. LEXIS 16072, at *6 2024 WL 3272243 (10th Cir. July 2, 2024) (unpublished).

Petitioner also suggests that his procedural default should be excused because he was "required to take an alternative procedural route into the post-conviction minefield as a substitute for his appeal – a process which does not afford the guaranteed rights to legal assistance and resources." ECF No. 25 at 18. But Petitioner did file a direct appeal, which he pursued all the way to the Utah Supreme Court. And, Petitioner was represented by counsel throughout his appeal.

Nor has Petitioner explained why he couldn't have filed a timely PCRA petition. Petitioner offers no support for his contention that he has "been helpless, forced to wait years to file his petition resulting in 'manifest injustice.'" ECF No. 25, at 19. Petitioner fails to establish cause to excuse his procedural default.

16

d. No Miscarriage of Justice

Petitioner argues that his procedural default should be excused because it would result in a miscarriage of justice. The miscarriage of justice exception requires a petitioner to show that "in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. at 386-87 (internal citations omitted).

Petitioner vaguely alludes to newly discovered evidence without identifying such evidence, nor why it would have been impossible to discover earlier in the proceedings by the exercise of reasonable diligence.

> [The fact that state procedural bars would now prevent Petitioner from exhausting his claims] does amount to cruel and unusual punishment. Petitioner has been helpless, forced to wait years to file his petition resulting in "manifest injustice." This procedural limitation creates a rare and exceptional circumstance's [sic] where Petitioner and others in similar situations are effectively denied the opportunity to challenge critical issues, such as the consideration of newly-discovered evidence until an appellate court's decision is rendered.")

ECF No. 25, at 19. Petitioner also fails to support his baseless argument that his sentence was somehow rendered void by the closure of the Utah State Prison and his transfer to the Central Utah Correctional Facility. *See*, *Id*. at 22-24.

Indeed, the kernel of the court's analysis regarding a miscarriage of justice is not whether Petitioner urgently believes there were errors in state proceedings – or whether there were indeed errors, but whether Petitioner is factually innocent. This factual innocence must be supported with new evidence, which Petitioner has not provided. Petitioner has not shown that he qualifies for the fundamental miscarriage of justice exception to procedural default.

17

## V. CONCLUSION

Petitioner's second claim is too vague and conclusory to state a claim upon which relief may be granted. Further, Petitioner failed to afford the Utah state courts a fair opportunity to correct alleged violations of federal law. Petitioner's federal claims are now procedurally defaulted. Petitioner has not shown that he qualifies for an exception to procedural default. Therefore, Petitioner's claims must be denied.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus is **DENIED** and the action **DISMISSED WITH PREJUDICE**.

**IT IS ALSO ORDERED** that a certificate of appealability is **DENIED**.

This action is **CLOSED**.

DATED this 15th day of May 2026.

BY THE COURT

JUDGE ANN MARIE MCIFF ALLEN
United States District Court

18